UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                         )
                                                         )
GARY CHARLES BRESTLE,                                    )
                                                         )
                    Plaintiff,                           )
                                                         )
              v.                                         )        Civil Action No. 11-1771 (RWR)
                                                         )
HARLEY LAPPIN,                                           )
                                                         )
                    Defendant.                           )
_____                 )

MEMORANDUM OPINION AND ORDER

Plaintiff, a federal prisoner proceeding *pro se*, claims that the Bureau of Prisons ("BOP")

failed to provide documents in response to his Freedom of Information Act ("FOIA") request

dated May 9, 2011.[1]  Defendant, having released documents to plaintiff, moves to dismiss under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) or for summary judgment under Rule 56.

Def.'s Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. [Dkt. # 18].  Plaintiff cross

moves for summary judgment and requests attorney's fees.  Summ. J. Pursuant to F.R.Cv.P.,

Rule 56(a) Award Attorney Fees [Dkt. # 33].  In addition, plaintiff has filed a document

captioned "Plaintiff's Response to ECF No. 18 and Motion for Compulsory Joinder of

Defendants Pursuant to F.R.Cv.P., Rule 19, 20, 21, & 25 and Motion for Joinder in Issue for

---

[1]    Although plaintiff has named former BOP Director Harley Lappin as the defendant, only
federal agencies are subject to suit under the FOIA.  Therefore, the complaint against Lappin is
dismissed and the Department of Justice, of which BOP is a component, is substituted as the
proper defendant.  *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006)
("[T]he district court properly dismissed the named individual defendants because no cause of
action exists that would entitle appellant to relief from them under the . . . FOIA.") (citations
omitted).

FOIA and FTCA Tort Action Pending Before This Court" [Dkt. # 24], and a motion for

"Contempt of Court" [Dkt. # 37].  The contempt motion will be denied as baseless because it

seeks sanctions against "the defendant" for unspecified behavior.  Mot. at 2.  The motion for

joinder will be denied as moot since plaintiff's FTCA claim forming the basis of a separate

action has been transferred to the Southern District of Georgia, *Brestle v. United States of

America*, No. 12-84 (D.D.C. May 14, 2012), and the proper defendant for this FOIA action has

been substituted.[2]  The joinder motion will be cited in this opinion as plaintiff's opposition

("Pl.'s Opp'n").

     Upon consideration of the parties' submissions and the entire record, defendant's motion

for summary judgment will be granted in part and deferred in part, and plaintiff's cross-motion

for summary judgment and attorney's fees will be denied.

## BACKGROUND

     By letter dated May 9, 2011, plaintiff requested "any and all documents forwarded to

case Manager Randy Courson, 'SIS' Officer Lt. Adams, or 'SIS' Lt. Davis, between the dates

May 1, 2009, thru October 30, 2009, emanating from the office of 'A' Unit Secretary Ms.

Ramona Poole . . . ."  Compl. Attach.  Plaintiff emphasized that he wanted "all the relevant

transmissions by Secretary Poole" and stated that all of the individuals mentioned in the request

"were or are at the Federal Correctional Facility, FCI/FSL, Jesup, Georgia, 2680 Highway 301

South," *id*., which is where plaintiff is incarcerated.

---

[2]   Plaintiff asserts that "[t]he DOJ, BOP, and FBI Failed to Perform Their Statutory Duty
and/or Their Sworn Duties Pursuant to Their Oaths of Office," Mot. for Joinder at 4, but the
complaint is not based on a FOIA request submitted to the FBI, *see generally* Compl. & Attach.,
and plaintiff has not moved to add such a claim.  Any purported claim involving the FBI is
beyond the scope of this civil action.

By letter of August 16, 2011, to BOP, plaintiff inquired about the status of his request, Def.'s Ex. 1 [Dkt. # 18-1].  Having received no response, plaintiff filed this civil action on October 5, 2011.  By letter of October 14, 2011, BOP released three pages containing redacted material and informed plaintiff that information was withheld under FOIA exemptions 6 and 7(C), *see* 5 U.S.C. § 552(b).  Def.'s Ex. 3 [Dkt. # 18-3].  In response to this lawsuit, defendant conducted another search and released an additional 31 pages, some with redactions made pursuant to FOIA exemptions 6, 7(C) and 7(F).  Decl. of Christine Greene [Dkt. # 18-6] ¶¶ 17, 19 & *Vaughn* Index; Def.'s Ex. 5 [Dkt. # 18-5].

## REVIEW STANDARD

Summary judgment may be appropriately granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Courts draw all reasonable inferences from the evidentiary record in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

"A district court must conduct a de novo review of the record in a FOIA case, and the agency resisting disclosure bears the burden of persuasion in defending its action." *Milton v. U.S. Dep't. of Justice*, 783 F. Supp. 2d 55, 57 (D.D.C. 2011) (citing 5 U.S.C. § 552(a)(4)(B)).  In a FOIA case, summary judgment in favor of an agency is warranted where the agency demonstrates that no material facts are in dispute, that it conducted a search of records in its custody or control that was reasonably forecast to divulge all relevant information, *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), and that the information found through the search either has been released to the requestor or is exempt from disclosure.  *See*

*Skinner v. U.S. Dept. of Justice*, 806 F. Supp. 2d 105, 111 (D.D.C. 2011) (citing *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001)).

When, as here, an agency's search is questioned, the agency is entitled to summary judgment upon a showing, through declarations that explain in reasonable detail and in a nonconclusory fashion the scope and method of the search, that it conducted a search likely to locate all responsive records.  *Perry v. Block*, 684 F.2d 121, 126 (D.C. Cir. 1982).  Without contrary evidence of bad faith, the agency's amply detailed affidavits are sufficient to demonstrate compliance with the FOIA.  *Id.* at 127.  A search does not have to be exhaustive, and whether a search is adequate is determined by methods, not results.  *Weisberg*, 745 F .2d at 1485.  An agency's failure to locate a specific responsive document will not, on its own, render an otherwise reasonable search inadequate.  *See Brown v. FBI*, 675 F. Supp. 2d 122, 125–26 (D.D.C. 2009) (citing *Wilbur v. CIA*, 355 F.3d 675, 678 (D.C. Cir. 2004)) (other citation omitted).

DISCUSSION

Plaintiff challenges the adequacy of BOP's search for responsive records and its invocation of FOIA exemptions 6 and 7 as justification for withholding information.  Pl.'s Opp'n at 8-10.  In support of summary judgment, defendant proffers the declaration of Christine Greene, who is a FOIA Paralegal at FCC Coleman, responsible for processing FOIA requests assigned to BOP's Southeast Regional Office.  Greene Decl. ¶¶ 1, 6.  Greene's statements are based on her "review of the official files and records . . . and [her] personal knowledge, including knowledge [she] acquired . . . through the performance of [her] official duties."  *Id.* ¶ 5.

1. <u>The Search for Records</u>

Plaintiff argues that the search "was unreasonable and [] clearly not conducted in good

faith because it fails to provide the investigative documents that demonstrate where the BOP properly performed its statutory duties . . . ." Pl.'s Opp'n at 8. Greene states that she received plaintiff's request from the Central Office on September 8, 2011, and that same day, "scanned a copy of the request directly to the [now-retired] FOIA Coordinator at FCI Jesup" for him to conduct a search and report to her by September 19, 2011. Greene Decl. ¶¶ 9-10. The Coordinator forwarded the request to plaintiff's "current 2011 unit manager . . . and the captain," since "[c]ase managers personally work with inmates on a day to day basis and handle their programming needs." *Id*. ¶¶ 9, 11. The unit manager, in turn, "forwarded the email" to his "team members consisting of the unit secretary, case manager, and counselor." *Id*. ¶ 11. The Coordinator did not at that time contact the person who was plaintiff's unit manager in 2009. *Id*.

The team members "visually checked [plaintiff's] central file and the filing which was pending for responsive documents," since "[t]he type of documents [plaintiff] was requesting normally are only placed in the[] inmate['s] central file." *Id*. In addition, "[t]he captain forwarded the [request] to his lieutenants and the SIS Department, [which] maintain[s] an investigative file on inmates when an investigation is opened." *Id*. Those efforts produced no responsive records. *Id*. Staff in the Correctional Service Department, which was investigating plaintiff's FTCA claim, located three pages that were "similarly responsive to the FOIA Request." *Id*. Those three pages constituted the initial release of records to plaintiff. *Id*. ¶ 12.

In preparing for the instant motion, Greene "sent another request for FCI Jesup to check for documents relevant to the original request," and "specifically asked the new FOIA Coordinator to check with SIS and the case manager to see if they had any documents which were forwarded to them by the unit secretary which inmate Brestle had personally given to the unit secretary." *Id*. ¶ 17. This inquiry resulted in the second release of 31 pages obtained from

5

plaintiff's "former case manager, who indicated these were copies of documents he received from the unit secretary and had forwarded to the SIS Department back in 2009." *Id*. Greene acknowledges that "no one had thought to check with [the 2009 case manager] during the initial search." *Id*.

Defendant's combined searches establish a reasonably adequate search. Plaintiff's vague and unsubstantiated references to other "investigative documents" fail to provide any basis for doubting the reasonableness of defendant's search. Hence, defendant is entitled to summary judgment on the search question.

2. Defendant's Claimed Exemptions

Defendant withheld third-party information under the FOIA's personal privacy provisions, namely, exemptions 6 and 7(C). Greene Decl. ¶¶ 13-15; 20-21. Exemption 6 protects information about individuals in "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). All information that "applies to a particular individual" would qualify for consideration under this exemption. *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 602 (1982); *accord New York Times Co. v. NASA*, 920 F.2d 1002, 1005 (D.C. Cir. 1990) (en banc); *see Akin, Gump, Strauss, Hauer & Feld, LLP v. United States Dep't of Justice*, 503 F. Supp. 2d 373, 381 (D.D.C. 2007) ("Congress' primary purpose in drafting Exemption 6 was to provide for confidentiality of personal matters.") (citation and internal quotation marks omitted). Exemption 7(C) protects from disclosure information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

The proper application of "privacy exemptions [6 and 7(C)] turns on a balance of 'the

individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny.' " *CEI Wash. Bureau, Inc.*, v. *Dep't of Justice*, 469 F.3d 126, 128 (D.C. Cir. 2006) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991)).  Hence, when a requester seeks such information, an agency must conduct a balancing test to determine if releasing the information would constitute a "clearly unwarranted invasion of personal privacy" by weighing the privacy interest in non-disclosure against any qualifying public interest in disclosure.  *Dep't of State v. Wash. Post Co.*, 456 U.S. at 596 n.1, 601-02.  It is this balancing test and "not the nature of the files in which the information was contained [that] limit[s] the scope of the exemption."  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 33 (D.C. Cir. 2002) (citation and internal quotation marks omitted); *see id*. ("assuming without deciding that the requested . . . records are 'similar files' under Exemption 6").  As the D.C. Circuit instructs:

> To establish that the release of information contained in government files would result in a clearly unwarranted invasion of privacy, the court first asks whether disclosure would compromise a substantial, as opposed to a de minimis, privacy interest.  If a significant privacy interest is at stake, the court then must weigh that interest against the public interest in the release of the records in order to determine whether, on balance, disclosure would work a clearly unwarranted invasion of personal privacy.  The public interest to be weighed against the privacy interest in this balancing test is the extent to which disclosure would serve the core purposes of the FOIA by contribut[ing] significantly to public understanding of the operations and activities of the government.  Thus, unless a FOIA request advances the citizens' right to be informed about what their government is up to, no relevant public interest is at issue.

*Id*. at 33-34 (citations and internal quotation marks omitted) (alteration in original).

Since both exemptions require weighing the privacy interests against an asserted public interest, the analysis must focus on whether defendant has properly invoked the respective exemption and on whether plaintiff has shown that an overriding public interest compels disclosure of any exempt information.  The defendant asserts there is no "discernible public

interest" in releasing the redacted information since it "would not shed light on the operations and activities of the BOP."  Greene Decl. ¶¶ 14, 20.

*Exemption 6*

In the initial release, defendant redacted the name and telephone number of an "investigator/staff member."  Greene Decl. ¶¶ 14, 20; *see* Def.'s Ex. 3 (released pages).  Greene states that disclosure of the information might subject the individual "to possible harassment or criticism[,] focus derogatory inferences," and "trigger hostility toward" the individual.  Greene Decl. ¶¶ 14, 20.  Defendant has demonstrated the "strong privacy interest" the staff investigator has in protecting his or her identity from disclosure.  *Id.* ¶ 20.

*Exemption 7*

FOIA Exemption 7 protects from disclosure "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . ." would cause certain enumerated harms.  5 U.S.C. § 552(b)(7).  The scope of exemption 7 encompasses "both civil and criminal matters."  *Tax Analysts v. I.R.S.*, 294 F. 3d 71, 77 (D.C. Cir. 2002).  The threshold requirement turns on an assessment of "how and under what circumstances the requested files were compiled . . . and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding."  *Id.* at 78 (quoting *Jefferson v. Dep't of Justice*, 284 F.3d 172, 176-77 (D.C. Cir. 2002)).  A "more deferential standard to a claim that information was compiled for law enforcement purposes" is applied "when the claim is made by an agency whose primary function involves law enforcement."  *Id.*; *see Campbell v. Dep't of Justice*, 164 F.3d 20, 32 (D.C. Cir. 1998) (explaining that the agency's declaration suffices if it supplies facts "in sufficient detail" to "establish a rational nexus between the investigation and one of the agency's law enforcement duties and a connection between an

individual or incident and a possible security risk or violation of federal law") (citations and internal quotation marks omitted).

Greene states that "[t]he information was received/compiled as a result of an investigation . . . conducted by BOP."  Greene Decl. ¶ 15.  She describes SIS as "a department within [BOP] which investigates inappropriate or illegal activities which occur within the prison system," *id*.  ¶ 9, and describes the responsive records as copies of documents plaintiff's former case manager "had forwarded to the SIS Department back in 2009."  *Id*. ¶ 17.  Plaintiff does not dispute that the documents are law enforcement records and, in fact, appears to agree with this characterization.  *See* Pl.'s Opp'n at 5 ("[T]he Plaintiff reported these criminal activities to his case manager . . . .  When the crimes were not reported, and the Plaintiff was denied access to the FBI, Plaintiff then went to his Unit Manager who[] immediately contacted the FBI . . . .  To date, the Defendants continue to refuse to release or deny the existence of these investigative records."); *cf. Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011) (finding law enforcement assertion "especially convincing [where] [requester] explicitly sought records related to his own criminal prosecution").  The threshold law enforcement requirement is satisfied.

*Exemption 7(C)*

In the second release, defendant invoked exemptions 6, 7(C) and 7(F) to withhold "the name of another inmate and his associates and to protect [plaintiff] from other inmates . . . ."  *Id*. ¶ 19; *see* Def.'s Ex. 5 (released pages).  The initial question is whether defendant properly withheld information under the "somewhat broader" standard of exemption 7(C).  *Beck v. Dep't of Justice*, 997 F.2d 1489, 1491 (D.C. Cir. 1993) (citation omitted); *see Roth v. U.S. Dep't of Justice*, 642 F.3d 1161, 1173 (D.C. Cir. 2011) (finding "no need to consider [e]xemption 6 separately [where] all information that would fall within the scope of [e]xemption 6 would also

9

be immune from disclosure under [e]xemption 7(C)").

"As a result of [e]xemption 7(C), FOIA ordinarily does not require disclosure of law enforcement documents (or portions thereof) that contain private information."  *Blackwell*, 646 F.3d at 41 (citing cases).  This is because the disclosure of information about an individual's involvement in law enforcement proceedings constitutes an unwarranted invasion of personal privacy under exemption 7(C).  *See Fitzgibbon v. CIA*, 911 F.2d 755, 767 (D.C. Cir. 1990) (quoting *Branch  v. FBI*, 658 F. Supp. 204, 209 (D.D.C. 1987)) (" '[T]he mention of an individual's name in a law enforcement file will engender comment and speculation and carries a stigmatizing connotation.' "); *accord Schrecker v. United States Dep't of Justice*, 349 F.3d 657, 661 (D.C. Cir.  2003) (citing cases that have "consistently supported nondisclosure of names or other information identifying [third-party] individuals appearing in law enforcement records, including investigators, suspects, witnesses, and informants").  In addition, third-party identifying information is "categorically exempt" from disclosure under exemption 7(C) in the absence of an overriding public interest in its disclosure.  *Nation Magazine, Washington Bureau v. United States Customs Service*, 71 F.3d 885, 896 (D.C. Cir. 1995).  Defendant properly invoked exemption 7(C).

*The Public's Interest*

The United States Supreme Court has broadly interpreted the "personal privacy interest that Congress intended Exemption 7(C) to protect."  *United States Dep't of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 762 (1989); *accord Nat'l Archives and Records Admin. v. Favish*, 541 U.S. 157, 165 (2004) ("[T]he concept of personal privacy under Exemption 7(C) is not some limited or 'cramped notion'. . . .") (quoting *Reporters Committee*, 489 U.S. at 763).  Such privacy interests may be invaded, then, only when a requester shows that

10

the information is necessary to "shed any light on the [unlawful] conduct of any Government

agency or official." *Reporters Committee*, 489 U.S. at 772-73; *accord Nation Magazine,*

*Washington Bureau*, 71 F.3d at 887-88; *SafeCard Services, Inc., v. SEC*, 926 F.2d 1197, 1206

(D.C. Cir. 1991).  This analysis applies equally to exemption 6.  *See Beck v. Dep't of Justice*, 997

F.2d 1489, 1491 (D.C. Cir. 1993) (while the "protection available under [] exemptions [6 and

7C)]  is not the same, . . . [t]he same [balancing] standard" applies); *Akin, Gump*, 503 F. Supp. 2d

at 383 ("[T]he general balancing test applied [under exemption 7(C)] to determine the extent of

the privacy invasion is the same as that under [e]xemption 6.").

   Plaintiff "must show that the public interest sought to be advanced is a significant one, an

interest more specific than having the information for its own sake" and that "the information is

likely to advance that interest."  *Favish*, 541 U.S. at 172.  Such a showing requires "more than a

bare suspicion" of official misconduct; "the requester must produce evidence that would warrant

a belief by a reasonable person that the alleged Government impropriety might have occurred."

*Id*. at 174.  For it is "[o]nly when [such evidence is] produced [that] there [will] exist a

counterweight on the FOIA scale for the court to balance against the cognizable privacy interests

in the requested records."  *Id*. at 174-75.

   The crux of plaintiff's argument is that BOP "failed in [its] statutory duties and engaged

in criminal acts."  Pl.'s Opp'n at 2.  He also asserts that "an individual[']s affairs are no longer

private when they involve statutory violations or their participation in the commission of a

crime."  *Id*. at 9.  Elaborating on this argument, plaintiff recounts "a series of events" that appear

to have motivated him to deliver the requested documents to BOP staff, *see id*. at 4-7, and states

that "a full and comprehensive disclosure . . . is required as they show evidence of three . . .

criminal acts committed by BOP officials in retaliation against the Plaintiff for trying to

accurately report these crimes then later on, in response to efforts to reveal that these agencies failed to perform their statutory duties and obligations of their oaths of office." Pl.'s Opp'n at 6-7.

"Because the FOIA is concerned with the right of the general public to know what their government is up to, the identity and interest of the party requesting the document are irrelevant to th[e] balancing" of public and privacy interests, *Mays v. DEA*, 234 F.3d 1324, 1327 (D.C. Cir. 2000), as is the requester's "personal stake in the release of the requested information." *Roth*, 642 F.3d at 1177 (quoting *Mays*, 234 F.3d at 1327). Defendant redacted information from the 34 released pages that identifies third-party individuals. Such information is "the type . . . [that] is simply not very probative of an agency's behavior or performance," *Mays*, 234 F.3d at 1327 (quoting *SafeCard Servs., Inc.*, 926 F.2d at 1205), and plaintiff has not proffered any evidence or pointed to anything in the record to find the contrary here.

In the absence of evidence of an overriding public interest in the disclosure of the otherwise exempt information, defendant is entitled to summary judgment on its application of FOIA exemptions 6 and 7(C) to the third-party information.

*Exemption 7(F)*

Exemption 7(F) of the FOIA protects from mandatory disclosure information compiled for law enforcement purposes to the extent that disclosure "could reasonably be expected to endanger the life or physical safety of any individual." 5 U.S.C. § 552(b)(7)(F). "This exemption affords broad protection to the identities of individuals mentioned in law enforcement files . . ., including any individual reasonably at risk of harm." *Quinto v. U.S. Dep't of Justice*, 711 F. Supp. 2d 1, 8 (D.D.C. 2010) (citations and internal quotation marks omitted). In general, this exemption has been interpreted to apply to names and identifying information of law

enforcement officers, witnesses, confidential informants and other third persons who may be unknown to the requester.  *See Plunkett v. Dep't of Justice,* No. 11-0341, --- F. Supp. 2d ---, 2013 WL 628546, at *8 (D.D.C. Feb. 20, 2013) (citing *Durham v. United States Dep't of Justice,* 829 F. Supp. 428, 434 (D.D.C. 1993); *Public Employees for Environmental Responsibility (Peer), Rocky Mountain Chapter v. U.S. E.P.A.,* 978 F. Supp. 955, 961 (D. Colo. 1997)).  But the statute protects "any individual" and, therefore, "is not so limited." *Long v. U.S. Dep't of Justice,* 450 F. Supp. 2d 42, 79 (D.D.C. 2006).  In reviewing claims under exemption 7(F), the inquiry is whether there is some nexus between disclosure and possible harm and whether the deletions were narrowly made to avert the possibility of such harm.  *Albuquerque Pub. Co. v. U.S. Dep't. of Justice,* 726 F. Supp. 851, 858 (D.D.C. 1989).

Defendant invoked exemption 7(F) to withhold information that would identify "cooperating individuals . . ., which if released, could reasonably be expected to endanger the life or physical safety of the individuals identified in the records."  Greene Decl. ¶ 22.  Plaintiff counters that defendant's "exclusion [under this exemption] is exceptionally ludicrous" because he is "the only individual exposed to potential harm."   Pl.'s Opp'n at 10.  Plaintiff's speculative assertion is belied by defendant's statement that it is protecting the identities of "cooperating *individuals.*"  Furthermore, plaintiff's argument ignores three truths about the FOIA.  First, as already has been noted, the requester's identity is irrelevant.  Second, the right to assert or waive a FOIA exemption belongs to the agency, not the requester.  *See Frugone v. CIA*, 169 F.3d 772, 774-75 (D.C. Cir. 1999) (holding "that only the CIA can waive its right to assert an exemption to the FOIA").  Third, "a document [required to] be disclosed under FOIA," is not only disclosed to the individual requester but also "to the general public . . . ."  *Stonehill v. IRS*, 558 F.3d 534, 538-39 (D.C. Cir. 2009).  It is not disputed that the individuals were cooperating with BOP's

investigation of "inappropriate or [potentially] illegal activities."  Greene Decl. ¶ 19; *see* Pl.'s Opp'n at 5.  Since an investigation of this kind could reasonably be expected to place cooperating individuals (plaintiff included) at risk, especially in a prison setting, defendant properly invoked exemption 7(F) and is entitled to summary judgment on this exemption.

    3.  Record Segregability

An agency must disclose "[a]ny reasonably segregable portion" of an otherwise exempt record.  5 U.S.C. § 552(b).  While an agency is presumed to have complied with its obligation to disclose non-exempt portions of the record, a "district court must make specific findings of segregability regarding the documents to be withheld."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).

According to Greene, BOP "carefully examined" the responsive documents for segregability and determined that disclosure of the withheld information "could cause unwarranted and clearly unwarranted invasion of the personal privacy interests of third parties; and could disclose the identities of – and information provided by – techniques and procedures."  Greene Decl. ¶ 23.  This is the only place in the record where defendant has referred to "techniques and procedures," which are not protected from disclosure under any of the exemptions defendant has invoked.

In addition, while defendant represents that it redacted information only from the released pages, the record reveals that virtually entire pages of information were withheld solely under exemption 7(C).  *See* Ex. 5, ECF pp. 7-19, 21-23, 25, 27-28, 32.  "Exemption 7(C) ordinarily permits the Government to withhold only the specific information to which it applies, not the entire page or document in which the information appears."  *Mays*, 234 F.3d at 1327.  Greene's statement about the agency's segregability review does not specifically address the large blocks

of information withheld under exemption 7(C), and the vague descriptions in the *Vaughn* index are equally unhelpful.  *Cf. Plunkett*, 2013 WL 628546, at *9 (approving defendant's "large swaths of redactions" where multiple exemptions were applied and the heavily redacted record "was identified to a third party individual's relationship to the subject murder").  Defendant has not demonstrated that the "exempt and nonexempt information [contained in the above-listed pages] are inextricably intertwined, such that the excision of exempt information would impose significant costs on the agency and produce an edited document with little informational value."  *Id.* (citations and internal quotation marks omitted).  Given the foregoing shortfalls, a segregability finding is impossible to make on the current record.

## ORDER

For the foregoing reasons, it is hereby

ORDERED that defendant's motion for summary judgment [Dkt. # 18] is GRANTED as to the adequacy of the search and the redaction of third-party information under FOIA exemptions 6, 7(C) and 7(F), and is otherwise held in abeyance; it is further

ORDERED that plaintiff's motion for summary judgment and attorney's fees [Dkt # 33] is DENIED; it is further

ORDERED that plaintiff's remaining motions for joinder [Dkt. # 24], to hold defendant in contempt of court [Dkt. # 37], and for "leave to file judicial notice, pursuant to Rule 201 F.R.Ev.P." [Dkt. # 43] are DENIED; it is further

ORDERED that by **July 22, 2013**, defendant shall (1) clarify whether it withheld information pertaining to "techniques and procedures" and, if so, explain the basis of the

withholding(s), (2) justify its withholding of large blocks of information under FOIA exemption

7(C), and/or (3) release to plaintiff any non-exempt information.


_____/s/_____
RICHARD W. ROBERTS
DATE:  June 20, 2013                    United States District Judge